**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| SEAN TAYLOR, and RICK HAWTHORNE, *on behalf of themselves and others similarly situated*,         )<br><br>Plaintiffs,     )<br><br>v.     )<br><br>BANK OF AMERICA CORPORATION, and BANK OF AMERICA, N.A.,    )<br><br>Defendants.     ) | **No. _____**<br><br>**COMPLAINT—CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Sean Taylor and Rick Hawthorne, individually and on behalf of a class of similarly situated persons, hereby file this Class Action Complaint, making the allegations herein upon personal knowledge as to themselves and their own acts, and upon information and belief and based upon investigation of counsel as to all other matters, as set forth herein.

## <u>INTRODUCTION</u>

1.  Since the beginning of the Iraq War through the present, members of our military services have been asked to make many sacrifices for our nation. One of these sacrifices is financial: leaving family, friends and the comforts of civilian life to answer our country's call to duty, leaving behind employment, a career, and financial security. The Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901 *et seq.* (formerly 50 U.S.C. App. §§ 501 *et seq.*), was enacted to address this sacrifice, and seeks "to enable [servicemembers] to devote their entire energy to defense needs of the Nation." 50 U.S.C. § 3902(1). The SCRA guarantees that all debts incurred by a servicemember before being called to active duty are reduced to a 6% per year interest rate, from the date deployment orders are received through the ensuing active-duty period

as required by 50 U.S.C. § 3937. The Act also requires financial institutions to permanently forgive interest above 6%.

2.     To attract and retain the businesses of active military members, Defendant Bank of America Corporation and Defendant Bank of America, N.A. (collectively "Bank of America" or "Defendants") implemented the SCRA through a proprietary program that promised benefits somewhat more generous that those required by the SCRA (hereafter "Military Benefits Program").

3.     Defendants markets heavily to servicemembers as a bank dedicated to military members, veterans, and their families.

4.     Defendants breached its statutory and contractual duties to America's fighting forces by charging interest rates and fees that were too high, allowing unlawful charges to improperly inflate servicemembers' principal balances, and charging compound interest on these inflated balances. Defendants then concealed overcharges from the thousands of military families victimized by Defendants' practices.

5.     The Eastern District of North Carolina previously approved the settlement of a nationwide class action against Bank of America, N.A. for similar alleged breaches between September 11, 2001 and February 5, 2018. *See Childress, et al. v. Bank of America, N.A.*, No. 5:15-cv-00231-BO (E.D.N.C.), ECF No. 126. Despite the *Childress* settlement, Bank of America again violates its statutory and contractual duties to America's servicemembers.

6.     During the relevant period, when Bank of America does provide a reduced interest rate to servicemembers, those benefits are often inadequate and/or illusory because Bank of America does not in fact reduce the interest rate to 6% per year as required by the SCRA and its contract, and does not permanently forgive that additional interest. For example, but not by way

2

of limitation, rather than permanently forgiving the interest and fees, Bank of America retroactively takes back this benefit by imposing an interest rate penalty on servicemembers after they leave active duty and return to civilian life.

7.     This "veteran penalty" is carried out by Bank of America imposing certain interest and fee increases *only on returning servicemembers*. No other customers are subject to these interest and fee penalties. By imposing this veteran penalty only on SCRA recipients, and not on any other customer, Bank of America creates the illusion of SCRA compliance without actually lifting servicemembers' financial burden as the SCRA requires. Bank of America's promise to be more generous than the SCRA by, for example, promising a longer benefits period, is also made false by the veteran penalty.

8.     The imposition of the veteran penalty is not only a violation of the SCRA and a breach of contract; it violates federal law specifically designed to prevent banks from creating such debt traps. The veteran penalty is carried out by Bank of America illegally increasing interest and fees on outstanding balances. This is an unfair and deceptive practice which has been outlawed in our Nation since 2009, when Congress passed the Credit CARD Act of 2009.

9.     Bank of America's practice undermines our nation's commitment to servicemembers and veterans. When veterans return from active duty, they must rebuild their lives often without employment, and are uniquely vulnerable to Bank of America's veteran penalty. By raising rates on veterans' outstanding balances – from a nominal 6% to 14.99% or more – Bank of America places our Nation's heroes into a debt trap. These veterans are already subject to intense emotional, familial, and financial stress, and Bank of America's veteran penalty illegally and immorally forces veterans into immediate financial stress. It violates the very purpose of the

SCRA's forgiveness requirement, which is to relieve servicemembers from financial penalties on account of their military service.

10. The named Plaintiffs in this action represented and protected our nation through military service. They now seek to represent and protect their fellow servicemembers and veterans through this class action.

11. Plaintiffs bring this action to recover actual damages for themselves and the proposed Class, and to secure injunctive and declaratory relief ordering Bank of America to cease and desist in these unlawful practices.

## JURISDICTION AND VENUE

12. Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 because this action arises, in part, under the laws of the United States, including the Servicemembers Civil Relief Act ("SCRA") 50 U.S.C. § 3901 *et seq.* and the Credit Card Accountability Responsibility and Disclosure Act of 2009 (the Credit CARD Act), 15 U.S.C. §§ 1601 *et seq.*

13. In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and (6) because the aggregate claims of the proposed class members exceed $5,000,000, and at least one named Plaintiff resides in a different state than Bank of America. The amount in controversy in this matter includes, but is not limited to, actual and consequential monetary damages, disgorgement of Defendants' ill-gotten gains, punitive damages, civil penalties, and attorneys' fees and costs.

14. This Court has personal jurisdiction over Defendants, as both its headquarters and business activities, which are the subject of the present Complaint, are located in North Carolina.

15. This Court also has personal jurisdiction over Defendants, as Defendants have consented to general jurisdiction in North Carolina. Bank of America has registered to do business

4

in North Carolina, has appointed a process agent for accepting service in North Carolina, owns property in North Carolina, and maintains a significant workforce in North Carolina.

16.     Venue is proper in this Court. Bank of America has major operations within Raleigh, North Carolina, is subject to personal jurisdiction within the district, and a significant portion of class members reside within the district.  Maintaining the venue of this class action in this district is therefore proper under 28 U.S.C. § 1391.

## PARTIES

17.     Plaintiffs file this Complaint in their individual capacity, and as a class action on behalf of themselves and all others similarly situated. They, along with other class members who may be named as class representatives at the time a motion is filed to certify the proposed classes, will represent the class identified below.

18.     Plaintiffs had one or more interest-bearing obligations to Bank of America that qualified for and legally required reduced interest and/or fees benefits from Bank of America because of an obligor's military service.

19.     Defendant Bank of America Corporation is a bank holding company and financial services holding company with headquarters in the Bank of America Corporate Center, 100 North Tyron Street, Charlotte, NC 28255.

20.     Defendant Bank of America, N.A., a wholly-owned subsidiary of Defendant Bank of America Corporation, is a national banking association with its principal place of business in Charlotte, North Carolina.

21.     Defendants provide credit card and other banking products and services to customers across the United States, including Plaintiffs here.

5

22.     Defendants do substantial business in the State of North Carolina with corporate leadership, corporate offices, employees, and customers located in North Carolina. Bank of America maintains at least fifty banking locations in Raleigh, North Carolina alone, and more than 250 banking locations statewide. Bank of America is one of the largest employers in North Carolina, employing more than 10,000 people in the state. Bank of America maintains minimum contacts with the State of North Carolina such that statewide general jurisdiction in North Carolina satisfies the due process clause of the United States Constitution, and maintenance of this suit does not offend traditional notions of fair play and substantial justice.

## CLASS ACTION ALLEGATIONS

**Class Definition**

23.     In accordance with Federal Rule of Civil Procedure 23, Plaintiffs bring this action in their individual capacities and as a class action on behalf of themselves and all others similarly situated. They, along with other class members who may be named as class representatives at the time a motion is filed to certify the proposed class, will represent the following class:

> All persons who, at any time on or after March 8, 2018, received reduced interest and/or fee benefits from Bank of America on an interest-bearing obligation because of an obligor's military service, but excluding persons who have executed a release of the rights claimed in this action.

24.     This class action satisfies the requirements of Federal Rule of Civil Procedure 23, including, but not limited to, numerosity, commonality, typicality, adequacy, and predominance.

**Impracticable Joinder**

25.     The proposed class is composed of tens of thousands of persons, geographically dispersed throughout the United States and serving the country overseas, the joinder of whom in one action is impracticable. The disposition of their claims in a class action will provide substantial benefits to both parties and the Court. Bank of America, either directly or through affiliated entities, is in possession of the names and addresses of all class members.

26.     Class treatment is particularly appropriate here because Bank of America conducts business in every jurisdiction in the United States. Further, this matter involves multiple federal statutes which were extensively and harmfully misapplied and violated by Defendants.

**Risk of Inconsistent or Varying Adjudications**

27.     Prosecution of separate actions by class members would risk inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

28.     Further, the outcomes of separate actions by individual members of the class could, as a practical matter, be potentially dispositive of the interests of other members of the class and substantially impair or impede their ability to protect their interests. Class-wide adjudication of Plaintiffs' claims, therefore, is appropriate.

29.     Bank of America has acted on grounds generally applicable to the class, thereby making class-wide adjudication of these claims appropriate.

**Common Questions of Law and Fact**

30.     There exists a well-defined community of interests and questions common to the class, which predominate over individual factual or legal questions. These common factual and legal questions include, but are not limited to:

(a)     Whether Bank of America improperly applied the SCRA to class members' accounts, thereby denying them benefits to which they are entitled by law;

7

(b)     Whether Bank of America violated the SCRA by imposing a "veteran penalty" on recipients of SCRA benefits upon their leaving active duty, thereby taking back SCRA benefits and failing to permanently forgive interest above 6%;

(c)     Whether Bank of America's Military Benefits Program, as described herein, constituted an enforceable contract term or a separately enforceable contract between Defendants and class members, and whether Bank of America's violations of the terms of its program gives rise to liability for breach of contract and/or violation of the SCRA;

(d)     Whether Bank of America's practices violated the Truth in Lending Act ("TILA"), including but not limited to violations of the Credit CARD Act of 2009, which amended TILA;

(e)     Whether Bank of America knew, reasonably should have known, or recklessly disregarded that its acts and practices were unlawful;

(f)     Whether Bank of America's acts and practices were negligent;

(g)     Whether Bank of America engaged in practices intending to deceive consumers;

(h)     Whether Plaintiffs and the class are entitled to statutory, actual, consequential, and/or punitive damages;

(i)     Whether Plaintiffs and the class are entitled to an accounting and other equitable relief;

(j)     Whether Bank of America owed fiduciary duties to Plaintiffs and the class and whether they breached such duties; and

(k)     Whether Plaintiffs and the class are entitled to recovery of attorney's fees and costs.

**Typicality**

31.     The individual Plaintiffs and the class representatives to be named are asserting claims that are typical of the claims of the entire class, and the class representatives will fairly and adequately represent and protect the interests of the class in that they have no interests antagonistic to those of the other members of the class.

**Fair and Adequate Representation**

32.     The individual Plaintiffs have retained counsel who are competent and experienced in the handling of litigation, including class action litigation, and who will fairly and adequately represent and protect the interests of the class. Likewise, the class representatives will fairly and adequately represent and protect the interests of the class as a whole.

**Superiority of Class Action Procedure**

33.     The individual Plaintiffs and other class members have all suffered damages as a result of Bank of America's unlawful and wrongful conduct. Absent a class action, Bank of America will likely retain a substantial unlawful gain, its conduct will go un-remedied and uncorrected, and the class members will likely be deprived of adequate relief. Class action treatment of these claims is superior to handling the claim in other ways.

34.     Certification of the class is appropriate under Federal Rule of Civil Procedure 23.

## STATEMENT OF FACTS

**Plaintiff Sean Taylor:**

35.     Plaintiff Senior Master Sergeant Sean Taylor resides in Clover, South Carolina. He has served our Nation since 2007, including service in the Air Force Reserves and Air Force Air National Guard, and on deployment to Iraq.

36.     Bank of America accepted Mr. Taylor into its Military Benefits Program for his Bank of America credit card. When Bank of America terminated Mr. Taylor from its Military Benefits Program, Mr. Taylor had a balance of over $3,000 on his card. Bank of America imposed the veteran penalty and raised the interest rate on that outstanding balance from a nominal 6% (compounded daily) to 14.99% in July 2024.

37.     In his last month in the Military Benefits Program, Mr. Taylor had over $3,200 on his credit card, and his periodic statement showed the following balances and applicable interest rates:

## Interest Charge Calculation

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate | Promotional Transaction Type | Promotional Offer ID | Promotional Rate End Date | Balance Subject to Interest Rate | Interest Charges by Transaction Type |
|---|---|---|---|---|---|---|
| Purchases | 6.00% V | | | | $ 1,693.55 | $ 8.35 |
| Balance Transfers | 6.00% V | | | | $ 1,660.22 | $ 8.19 |
| Direct Deposit and Check Cash Advances | 6.00% V | | | | $ 0.00 | $ 0.00 |
| Bank Cash Advances | 6.00% V | | | | $ 0.00 | $ 0.00 |

38.     The following month, Bank of America applied the veteran penalty and increased the interest rate on Mr. Taylor's outstanding balance, shown on his periodic statement as follows:

## Interest Charge Calculation

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate | Promotional Transaction Type | Promotional Offer ID | Promotional Rate End Date | Balance Subject to Interest Rate | Interest Charges by Transaction Type |
|---|---|---|---|---|---|---|
| Purchases | 14.99% V | | | | $1,708.35 | $21.75 |
| Balance Transfers | 14.99% V | | | | $1,578.19 | $20.09 |
| Direct Deposit and Check Cash Advances | 14.99% V | | | | $0.00 | $0.00 |
| Bank Cash Advances | 14.99% V | | | | $0.00 | $0.00 |

39.     Prior to his active duty, Bank of America did not send Mr. Taylor notice, in a clear and conspicuous manner, that his interest rate on outstanding balances incurred at 6%

(compounded daily) would increase to 14.99% or otherwise increase to a certain rate, or when precisely that would occur.

40. Bank of America's violations of law and breach of contract forced Mr. Taylor to pay additional interest and fees.

41. Bank of America also failed to reduce the interest rate and waive fees for Mr. Taylor's account, as required by the SCRA and/or Bank of America's Military Benefits Program. This practice was imperceptible to Mr. Taylor, as his monthly statements and other correspondence contained misrepresentations that he was being charged the correct interest rate.

42. Mr. Taylor relied on the misrepresentations in Bank of America's monthly account statements and correspondence when choosing to maintain accounts with Bank of America. He also continued to use the account and incur more debt on it, to Bank of America's benefit, based upon Bank of America's representations that it was complying with the SCRA and its Military Benefits Program. Had he known that Bank of America was charging him a higher interest rate than permitted by the SCRA or their Military Benefits Program, he would have closed accounts with Bank of America and moved to another bank.

43. Mr. Taylor paid more in interest charges and fees on his account with Bank of America than should have been due under a correct application of the SCRA and the Military Benefits Program and TILA.

44. Mr. Taylor never received an accounting of the overcharged interest or improper fees. Upon information and belief, Bank of America is still in possession of certain funds which were obtained as a result of the overcharged interest and improper fees and Bank of America continues to overcharge him on a regular basis.

**Plaintiff Rick Hawthorne**

45.     Plaintiff Sergeant Rick Hawthorne resides in the State of California. He began serving our Nation with the Army in 2016, including on overseas deployment to Afghanistan and the Middle East, and serving in the National Guard.

46.     During his period of service, Mr. Hawthorne had an interest-bearing credit card with Bank of America.

47.     Bank of America provided Mr. Hawthorne with interest rate and fee benefits under the SCRA and/or their Military Benefits Program. For example, Bank of America provided him with a nominal credit card interest rate of 6% during active duty and he took out debt while enjoying these benefits.

48.     Bank of America failed to reduce the interest rate and waive fees as required by the SCRA and/or their Military Benefits Program. This practice was imperceptible to Mr. Hawthorne, as his monthly statements and other correspondence contained misrepresentations that he was being charged the correct interest rate.

49.     Mr. Hawthorne relied on misrepresentations in Bank of America's monthly account statements and correspondence when choosing to maintain accounts with Bank of America. He also continued to use the account and incur more debt on it, to Bank of America's benefit, based upon Bank of America's representations that they were complying with the SCRA and their Military Benefits Program.  Had he known that Bank of America was charging a higher interest rate than permitted by the SCRA or their Military Benefits Program, he would have closed accounts with Bank of America and moved to another bank.

50.     When Bank of America terminated Mr. Hawthorne from its Military Benefits Program, Mr. Hawthorne had a balance of over $5,400 on his card. Bank of America raised the interest rate on that outstanding balance from a nominal 6% (compounded daily) to 12.74%.

51.     In his last month in the Military Benefits Program, Mr. Hawthorne had over $6,000 on his credit card, but his periodic statement showed the following balances and applicable interest rates:

## Interest Charge Calculation

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate | Promotional Transaction Type | Promotional Offer ID | Promotional Rate End Date | Balance Subject to Interest Rate | Interest Charges by Transaction Type |
|---|---|---|---|---|---|---|
| Purchases | 6.00%V | | | | $ 6,101.36 | $ 31.09 |
| Balance Transfers | 6.00%V | | | | $ 0.00 | $ 0.00 |
| Direct Deposit and Check Cash Advances | 6.00%V | | | | $ 0.00 | $ 0.00 |
| Bank Cash Advances | 6.00%V | | | | $ 0.00 | $ 0.00 |

52.     The following month, Bank of America applied the veteran penalty and increased the interest rate on Mr. Hawthorne's outstanding balance, shown on his periodic statement as follows:

## Interest Charge Calculation

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate | Promotional Transaction Type | Promotional Offer ID | Promotional Rate End Date | Balance Subject to Interest Rate | Interest Charges by Transaction Type |
|---|---|---|---|---|---|---|
| Purchases | 12.74%V | | | | $ 5,469.11 | $ 57.27 |
| Balance Transfers | 12.74%V | | | | $ 0.00 | $ 0.00 |
| Direct Deposit and Check Cash Advances | 12.74%V | | | | $ 0.00 | $ 0.00 |
| Bank Cash Advances | 12.74%V | | | | $ 0.00 | $ 0.00 |

53.     Prior to his active duty, Bank of America did not send Mr. Hawthorne notice, in a clear and conspicuous manner, that his interest rate on outstanding balances incurred at 6% (compounded daily) would increase to 12.74%, or when precisely that would occur.

54.     Mr. Hawthorne paid more in interest charges and fees on accounts with Bank of America than should have been due under a correct application of the SCRA and the Military Benefits Program and TILA.

55. Mr. Hawthorne never received an accounting of the overcharged interest or improper fees. Upon information and belief, Bank of America is still in possession of certain funds which were obtained as a result of the overcharged interest and improper fees and Bank of America continues to overcharge her on a regular basis.

**General Allegations**

56. Bank of America promised Plaintiffs and other class members that it monitored the accounts of servicemembers using a SCRA-compliant program.

57. The terms of Bank of America's Military Benefits Program included certain benefits that Bank of America considered to be more generous than those required by the SCRA. Those terms evolved over time but were always uniform across customers at any given point in time.

58. When a servicemember is enrolled into Bank of America's Military Benefits Program, it sends them a form letter confirming their SCRA coverage and informing the servicemember of the benefits they will receive under the Military Benefits Program.

59. Upon information and belief, the terms of Bank of America's Military Benefits Program were well documented, consistently applied and communicated to class members, and became terms of the agreements between the parties and therefore became enforceable in contract.

60. Upon information and belief, Bank of America offered the Military Benefits Program and its associated benefits to appear competitive in the consumer banking market and to retain the business of servicemembers. Plaintiffs and other class members relied on Bank of America's representations regarding the Military Benefits Program when deciding to maintain their accounts with Bank of America and to incur more debts on those accounts. If Bank of

America had failed to provide this competitive program, Plaintiffs and other class members would have curtailed use of and closed their accounts with Bank of America and moved to another bank.

61.     Despite their representations to Plaintiffs and other class members, Bank of America failed to comply with the SCRA and the terms of its Military Benefits Program. Specifically, Bank of America failed to reduce the interest rates on servicemembers' accounts as promised and required, and failed to waive fees as promised, and failed to properly calculate the debt forgiveness requirements of both the SCRA and the Military Benefits Program.

62.     When Bank of America does provide a reduced interest rate pursuant to the SCRA and its Military Benefits Program, those benefits are inadequate and/or illusory because Bank of America does not in fact reduce the interest rate to 6% per year as required and permanently forgive that additional interest. For example, but not by way of limitation, despite indicating that it is charging 6% to servicemembers, Bank of America applies a rate above 6% per year when accounting for daily compound interest and the imposition of certain fees.

63.     In addition, rather than permanently forgiving the interest and fees, Bank of America retroactively takes back this benefit by imposing an interest rate penalty on servicemembers after they leave active duty and return to civilian life.

64.     This "veteran penalty" is carried out by Bank of America imposing certain interest and fee increases *only on returning servicemembers*. No other customers are subject to these interest and fee penalties. By imposing this veteran penalty only on SCRA recipients, and not on any other customer, Bank of America creates the illusion of SCRA compliance without actually lifting servicemembers' financial burden as the SCRA requires.

65.     When Bank of America terminates a customer's military benefits, Bank of America raises the interest rate and fees on any outstanding balances on the servicemember's credit card.

66.     When Bank of America terminates a customer's military benefits, Bank of America raises the interest rate and fees on all outstanding balances on the servicemember's credit card, whether the debt was incurred before, during, or after active duty.

67.     Bank of America does not increase interest rates on other non-military customers' outstanding balances. This type of interest rate increase (increasing interest rates on outstanding balances) is imposed only on customers whose SCRA benefits are terminating, i.e., veterans and their families.

68.     By increasing interest rates on veterans' and servicemembers' outstanding balances, Bank of America recoups part of the cost of providing interest rate benefits to servicemembers under the SCRA and Military Benefits Program.

69.     The veteran penalty is carried out by Bank of America increasing interest and fees on outstanding balances. This is an unfair and deceptive practice which has been outlawed in our nation since 2009, when Congress passed the Credit CARD Act of 2009.

70.     When a servicemember is enrolled into the Military Benefits Program, Bank of America sends them a form letter confirming their SCRA coverage and informing the servicemember of the benefits they will receive under the Military Benefits Program.

71.     When Bank of America confirms SCRA benefits for a servicemember, Bank of America does not provide a legally sufficient disclosure of the length of the benefit period or the annual percentage rate that would apply after the expiration of the period.

72.     Bank of America's letters confirming enrollment in the Military Benefits Program are sent at a time when the servicemembers are going onto or are already on active duty, so many servicemembers do not have the capacity to focus on those letters or may not receive them at all.

73. Bank of America did not and does not disclose to Plaintiffs and class members the length of the period of interest rate reduction or the interest rate that will apply after that period, prior to the commencement of SCRA and Military Benefits Program interest rate reductions.

74. Bank of America did not forgive incurred interest, including certain fees and charges, as required by the SCRA and the Military Benefits Program. As a result, Bank of America overstated the outstanding balances on servicemembers' accounts and unlawfully charged interest on those balances on a recurring basis.

75. Bank of America has not maintained adequate internal systems to ensure compliance with the SCRA or to meet the terms of its Military Benefits Program.

76. Bank of America's violations of the SCRA and Military Benefits Program were carried out through complex computer calculations that were not discoverable by servicemembers, as the periodic account statements and other communications received by Plaintiffs and other class members incorrectly reflected that the interest rate on servicemembers' accounts was properly reduced.

77. These violations caused damage to servicemembers, including the miscalculation of principal, interest, payoff amounts, and improper imposition of interest, fees, and other charges.

78. Bank of America's violations of the terms of the Military Benefits Program constituted a breach of its contracts with Plaintiffs and other class members.

79. In addition to violating the SCRA and the terms of its own Military Benefits Program, Bank of America made certain misrepresentations to Plaintiffs and other class members about their accounts that concealed and prevented Plaintiffs and class members from reasonably discovering such violations.

80.     For example, on a monthly basis Bank of America sent Plaintiffs and class members account statements which reflected the appropriately reduced interest rate during times of active duty and during additional periods for which benefits were provided under the Military Benefits Program, when Bank of America was in fact charging significantly higher interest rates on those accounts, including but not limited to through compound interest. This conduct violated the SCRA, TILA, and Bank of America's own Military Benefits Program. These higher interest rates improperly inflated Plaintiffs' and class members' outstanding balances, upon which Bank of America then charged additional interest.

81.     Bank of America's acts and omissions, including its failure to comply with the SCRA and Military Benefits Program, caused damage to the Plaintiffs, including but not limited to payment of additional, unnecessary, and improper interest, charges, and fees.

82.     In addition, Bank of America is still in possession of certain funds belonging to Plaintiffs and class members which were obtained as a result of the overcharged interest on servicemembers' accounts.

83.     Bank of America's failure to comply with the SCRA, TILA, and the Military Benefits Program resulted in significant wrongful gain, based on the improperly high interest rates charged to the accounts of Plaintiffs and other class members during and after periods of active military service.

**ALLEGATIONS AS TO DISCOVERY**

84.     Some, if not all, of the violations and breaches described herein remain ongoing. Bank of America's violations of the SCRA resulted in improper inflation of the principal balances owed by Plaintiffs and class members, and subsequent monthly interest being charged on these inflated balances. Thus, each and every month in which Bank of America overcharged interest on

servicemembers' accounts as required by the SCRA, or failed to forgive debt that accrued as a result of this failure, constituted an ongoing violation of, *inter alia*, the SCRA.

85. Each month, Bank of America sent incorrect periodic statements to Plaintiffs and class members, constituting an ongoing violation of the SCRA, TILA, and other laws and regulations.

86. Bank of America further violated TILA when it sent correspondence to servicemembers containing misrepresentations that were designed to conceal Bank of America's violations of the SCRA and discourage further investigation by Plaintiffs and class members. Bank of America's actions, including its misrepresentations, and failure to provide an accounting of its SCRA violations, constitute further violations of statutory and common law and have caused further damages to Plaintiffs and class members.

87. The policies behind the SCRA, and the facts described herein, require an equitable tolling of any statute of limitations. Bank of America should not be allowed to retain its ill-gotten gains resulting from such improper activity.

## FIRST CAUSE OF ACTION
### (Violation of the Servicemembers Civil Relief Act)

88. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

89. Plaintiffs, on behalf of themselves and the class, have a private right of action for violations of the SCRA pursuant to 50 U.S.C. § 4042 (formerly 50 U.S.C. App. § 597a).

90. The SCRA, formerly known as the War and National Defense Soldiers' and Sailors' Civil Relief Act of 1940, guarantees that all debts incurred by a servicemember or servicemember reservist before being called to active duty will be reduced to an interest rate of 6% from the date of receipt of their orders, and during the ensuing active-duty period as required by 50 U.S.C. §

3937 (formerly 50 U.S.C. App. § 527). Several classes of fees and charges qualify as interest. Any interest above the 6% must be forgiven and cannot be deferred.

91.     Bank of America violated the SCRA by failing to properly apply its provisions to the accounts and outstanding debt of Plaintiffs and other class members. Specifically, Bank of America charged interest rates higher than 6% on the accounts of Plaintiffs and class members during active military service and failed to forgive overcharged interest as required by the SCRA. One method by which Bank of America overcharged servicemember was to apply a nominal 6% interest rate, and then also apply daily compounding, resulting in an interest rate that exceeded the 6% per year simple interest cap under the SCRA and Military Benefits Program. As a result, Bank of America improperly inflated servicemembers' principal balances, and subsequently charged still more compound interest on those inflated balances.

92.     Bank of America purported to reduce interest rates in compliance with the SCRA, but then took back those benefits by imposing interest and fee increases *only upon* SCRA recipients leaving active duty.

93.     Through this "veteran penalty," Bank of America recouped some or all of the interest rate reduction that was provided under the SCRA. This violated 50 U.S.C. § 3937(a)(2) ("Interest at a rate in excess of 6 percent per year that would otherwise be incurred but for the prohibition in paragraph (1) is forgiven.").

94.     Bank of America was aware of the provisions and requirements of the SCRA. Bank of America either knew, reasonably should have known, and/or recklessly disregarded its failure to comply with the SCRA and the exploitative and deceptive nature of its policies, procedures, and decisions.

95. Plaintiffs incurred damages as a direct and proximate result of Bank of America's violations of the SCRA. For many class members, this harm is ongoing. As a result, Plaintiffs and the class members seek relief.

### SECOND CAUSE OF ACTION
**(Breach of Contract)**

96. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

97. Bank of America developed a contractual SCRA program with Plaintiffs that Bank of America implemented nationwide and across all loan types.

98. Bank of America's conduct and communications informed Plaintiffs and class members of the terms of this program, with an understanding that they would rely upon that program in managing their financial affairs while a servicemember was engaged in active military service. Bank of America's Military Benefits Program was developed and offered to Plaintiffs and other similarly situated military families to maintain competitiveness in the banking industry and to retain the business of servicemembers; Bank of America knew that if its program was not competitive, servicemembers would move their business to another bank.

99. Bank of America's Military Benefits Program either constituted an enforceable term of Bank of America's existing contracts with Plaintiffs and class members and/or constituted a separate enforceable contract with Plaintiffs and other class members.

100. In addition, Bank of America's contracts with Plaintiffs and class members contain an implied covenant of good faith and fair dealing which required Bank of America to deal fairly and in good faith with Plaintiffs and class members.

101. Plaintiffs and other class members maintained their accounts with Bank of America and incurred additional debt on those accounts, to Bank of America's benefit, in reliance on Bank

of America's Military Benefits Program and the purported benefits offered therein by Bank of America, which were promised as competitive with those offered by other banks.

102.     The terms of Bank of America's Military Benefits Program evolved over time but were always uniform across customers at any given point in time.

103.     Bank of America violated the terms of the Military Benefits Program, and thereby breached its contracts with Plaintiffs and class members.

104.     By increasing interest rates and not honoring its promises, Bank of America violated the terms of the Military Benefit Program, and thereby breached its contracts with Plaintiffs and class members.

105.     The Military Benefits Program must be interpreted to be consistent with federal law, including the Credit CARD Act. Thus, when Bank of America promised to extend credit at 6%, the contract prevented Bank of America from raising the interest rates and fees on outstanding balances incurred at the 6% rate. Bank of America breached the contract by later increasing the rates and fees on these outstanding balances and/or by recouping the interest rate benefit by imposing these later overcharges. This constitutes a separate breach of contract from the breaches described elsewhere.

106.     Bank of America breached the terms of the Military Benefits Program by imposing a veteran penalty on customers whose SCRA benefits had expired, thereby taking back the promised contractual benefit.

107.     Bank of America charged Plaintiffs and class members more interest and fees than was permitted by the Military Benefits Program. Plaintiffs, in reliance on the program terms, promises, and certain representations from Bank of America, as described herein, paid the improper interest charges and fees, and Bank of America currently retains those payments.

108.    As a direct and proximate result of Bank of America's breach of contract as described herein, Plaintiffs and class members have been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

109.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

110.    Bank of America is in privity of contract with Plaintiffs and each member of the class.

111.    Bank of America breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract, including by imposing a veteran penalty to take back part or all of the promised contractual benefit.

112.    Plaintiffs and class members had justified expectations that, under the contracts, Bank of America would provide them all statutory and contractual benefits, comply with all applicable federal and state statutes, create and maintain a robust SCRA compliance program, and honestly and forthrightly provide them with information needed to understand and enforce their rights.

113.    Bank of America breached its duty to Plaintiffs and class members by violating the SCRA and Bank of America's Military Benefits Program, failing to advise eligible class members about their eligibility for statutory and contractual benefits, concealing such violations from Plaintiffs and class members, and making misrepresentations regarding the nature of its reimbursement program and refunds issued to Plaintiffs and class members.

114.    Bank of America's breach of its duties was the direct and proximate cause of damages sustained by the Plaintiffs and the class.

## FOURTH CAUSE OF ACTION
### (Violation of Truth in Lending Act)

115.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

116.    Pursuant to 15 U.S.C. § 1637(b), monthly statements provided by "[t]he creditor of any account under an open consumer credit plan" shall include, *inter alia*:

- "The amount of any finance charge added to the account during the period, itemized to show the amounts, if any, due to the application of percentage rates," § 1637(b)(4);

- "Where one or more periodic rates may be used to compute the finance charge, each such rate, the range of balances to which it is applicable, and . . . the corresponding nominal annual interest rate," § 1637(b)(5); and

- "Where the total finance charge exceeds 50 cents for a monthly or longer billing cycle . . . the total finance charge expressed as an annual percentage rate," § 1637(b)(6).

117.    Bank of America violated § 1637 and, upon information and belief, other provisions of TILA by providing monthly account statements to Plaintiffs and other class members which inaccurately reflected the interest rate that Bank of America was applying to the outstanding debt of servicemembers during active military duty. In reality, Bank of America applied a mathematical formula that charged interest at a rate significantly higher than that permitted under the SCRA, and Bank of America's Military Benefits Program.

118.    Plaintiffs and other class members relied on the misrepresentations contained in Bank of America's monthly account statements when choosing to maintain their accounts with Bank of America. Had Plaintiffs and other class members known that Bank of America was

charging them an illegally high interest rate in violation of the SCRA and Bank of America's Military Benefits Program, or that Bank of America's SCRA benefits were not competitive with those offered by other banks, they would not have incurred additional debt on their accounts but rather would have closed their accounts with Bank of America and moved to another bank.

119.    Bank of America's violations of TILA deceived Plaintiffs and class members, concealed Bank of America's SCRA violations, and directly and proximately caused damages to Plaintiff and the class, including but not limited to paying improperly inflated amounts to Bank of America.

120.    Plaintiffs and the class are entitled to statutory and actual damages and other relief under TILA.

## FIFTH CAUSE OF ACTION
### (Violation of Truth in Lending Act – Credit CARD Act of 2009)

121.    The Credit CARD Act of 2009 prohibits card issuers from raising interest rates on existing balances, known as "protected balances." 15 U.S.C. § 1666i-1. The statute provides, "In the case of any credit card account under an open end consumer credit plan, no creditor may increase any annual percentage rate, fee, or finance charge applicable to any outstanding balance, except as permitted under subsection (b)." *Id*. § 1666i-1(a). Rather, card issuers are required to separately track those protected balances and keep interest at the previous lower rate. *Id*. § 1666i-1(c). The card holder then has certain options for paying off the protected balances, such as amortizing the balance on a five-year schedule. *Id*.

122.    The CARD Act contains four exceptions to the protected balances rule, none of which apply here. *Id*. § 1666i-1(b). Bank of America cannot rely upon the exception for increases in interest rates upon the expiration of a specified period of time, because active duty is by its nature not for a specified period of time and does not generally have a specified end date. Bank of

America's program recognizes that the duration of its Military Benefits Program is not set and will be determined based upon the actual duration of active duty, which often changes over the course of active duty. Furthermore, this exception requires that "prior to the commencement of that period, the creditor disclosed to the consumer, in a clear and conspicuous manner, the length of the period and the annual percentage rate that would apply after the expiration of the period," *id*., which Bank of America does not do.

123. Any attempt by Bank of America to rely upon the SCRA confirmation letters as a defense to the CARD Act claim or a waiver of rights constitutes a violation of its fiduciary duty.

124. The Federal Reserve has recognized that the "specified period of time" exception does not apply to active duty and SCRA benefits, stating, "Under revised TILA Section 171, a creditor that complies with the SCRA by lowering the annual percentage rate that applies to an existing balance on a credit card account when the consumer enters military service arguably would not be permitted to increase the rate for that balance once the period of military service ends and the protections of the SCRA no longer apply." 12 C.F.R. Part 226, Regulation Z; Docket No. R-1370.

125. In adopting the Regulation Z rules implementing the CARD Act, the Federal Reserve created an additional exception not contained in the statute. The rule provides:

> Servicemembers Civil Relief Act exception. If an annual percentage rate or a fee or charge . . . has been decreased pursuant to 50 U.S.C. app. 527 or a similar Federal or state statute or regulation, a card issuer may increase that annual percentage rate, fee, or charge once 50 U.S.C. app. 527 or the similar statute or regulation no longer applies, provided that the card issuer must not apply to any transactions that occurred prior to the decrease an annual percentage rate, fee, or charge that exceeds the annual percentage rate, fee, or charge that applied to those transactions prior to the decrease.

Regulation Z, § 1026.55(b)(6) (the "regulatory exemption"). In adopting the regulatory exemption, the Federal Reserve System Board of Governors made it clear that the exception only

applies to rates or fees that have been reduced "by operation of the SCRA." Truth in Lending, 75 Fed. Reg. 7568, 7741 (Feb. 22, 2010).

126.    The regulatory exemption does not apply here because Bank of America reduced its interest rate under its Military Benefits Program, which were established for business reasons, not "by operation of the SCRA." These additional benefits may appear more generous than the SCRA, but in fact they are less generous and provide a more dangerous debt trap to servicemembers and veterans.

127.    In the alternative, if the regulatory exemption were applicable, it should be declared illegal, null, and void, because the CARD Act does not permit such an exemption, and depriving veterans of protections from debt traps that are available to all other consumers is contrary to the SCRA, TILA, and national policy.

128.    Bank of America violated the Credit CARD Act by increasing the interest rate on protected balances servicemembers incurred before, during, and after active duty, resulting in the imposition of unlawful fees and interest.

129.    Bank of America's violations of TILA directly and proximately caused damages to Plaintiffs and the class.

130.    Plaintiffs and the class are entitled to actual damages, statutory damages, and other relief under TILA.

**SIXTH CAUSE OF ACTION**
**(Negligence)**

131.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

132. Certain actions and affirmative undertakings by Bank of America, including but not limited to the creation of Bank of America's Military Benefits Program, created a duty of care owed by Bank of America in implementing those programs and in dealing with Plaintiffs and class members.

133. Bank of America breached its duty to Plaintiffs and class members by violating the SCRA and the Military Benefits Program, failing to implement technologies and systems to assure satisfaction of Bank of America's obligations under these programs, concealing such violations from Plaintiffs and class members, and making misrepresentations regarding the same.

134. Bank of America knew, reasonably should have known, or recklessly disregarded its duty of care to Plaintiffs and class members.

135. Bank of America's negligence and breach of its duties was the direct and proximate cause of damages sustained by the Plaintiffs and the class.

**SEVENTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**

136. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

137. Bank of America owed Plaintiffs and other class members a duty to provide accurate and complete information regarding the interest rates being charged on their outstanding debt during periods of active military service and the period thereafter.

138. As described herein, Bank of America provided certain information to Plaintiffs and other class members regarding the interest rates being charged on their outstanding debt during periods of active military service and the period thereafter.

139. Specifically, Plaintiffs' and class members' periodic account statements reflected a lower interest rate than actually charged on their outstanding debt during and after active duty.

140. This information was false, as Bank of America was actually charging Plaintiffs and class members improperly high interest rates in violation of the SCRA and Bank of America's Military Benefits Program, and the communications were designed to conceal the full nature of the violations.

141. Plaintiffs and other class members suffered damage as a direct and proximate result of their reliance on Bank of America's false information, as they were charged illegally high interest rates and improper fees on their outstanding debt during active duty, in violation of the SCRA.

142. As a direct and proximate result of Bank of America's improper and negligent actions, Plaintiffs and other class members sustained an ascertainable loss as well as other damages.

## EIGHTH CAUSE OF ACTION
### (Breach of Fiduciary Duty or Special Trust)

143. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

144. Bank of America did not have a typical, arms-length, lender/borrower relationship with Plaintiffs and class members. In the unique facts of this case, Bank of America took on a role of fiduciary to the Plaintiffs and the class. *See Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 367-8 (2014) (fiduciary relationship arises when "that has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence" and could arise from a bank-customer transaction "given the proper circumstances") (internal citations and quotation marks omitted).

145. The facts giving rise to the fiduciary duty or special trust include but are not limited to the following:

- Bank of America specifically marketed to servicemembers, including servicemembers being deployed overseas;

- Plaintiffs and class members provided Bank of America with documentation of their military status, which typically included overseas deployment orders. Thus, Bank of America solicited and received notice that Plaintiffs and class members would be deployed overseas or otherwise engaged in active duty and could not fully monitor their accounts or act in an arms'-length manner with the Bank of America during periods of active military service. Bank of America also received such notice when Plaintiffs and class members charged certain on-base purchases in military engagement areas. Bank of America was on notice that class members would have a particularly difficult time monitoring their accounts like a typical customer.

- The SCRA reflects a Congressional determination that servicemembers cannot and should not be required to protect their own financial interests while serving full time in the U.S. military. By participating in the SCRA program and specifically marketing benefits beyond what the SCRA provides, Bank of America has acknowledged this unequal relationship and taken on fiduciary duties.

- The nature of military service also places servicemembers at a disadvantage to the bank, unlike other customers. If a bank

overcharges a servicemember, the servicemember does not, as a practical matter, have the same recourse as other customers. They must still pay their bills as if the bank's calculations were correct. Otherwise, their failure to timely pay bills can lead them to lose security clearance and, in turn, their military position and employment. Bank of America is aware of this dynamic and has undue influence over their servicemember customers.

146.    Bank of America breached the fiduciary duties owed to Plaintiffs and the class and/or the special trust, including by overcharging servicemembers and returning veterans. Any attempt by Bank of America to rely upon notice provided to servicemembers during active duty constitutes a breach of fiduciary duties. These breaches directly and proximately caused Plaintiffs to suffer damages entitling Plaintiffs and the class to an accounting, restitution, and other equitable remedies.

## NINTH CAUSE OF ACTION
### (Accounting)

147.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

148.    Plaintiffs are entitled to an accounting either because (1) Bank of America breached fiduciary duties and/or or a special trust, or (2) the accounts that will determine the amounts that Bank of America owes to Plaintiffs and the class are possessed only by Bank of America and are so complex that they warrant resolution through an accounting rather than traditional discovery procedures.

149.     Accordingly, Plaintiffs and other class members are entitled to an accounting of all overcharges, as well as all assets, funds, revenues, and profits received and retained by Bank of America as a result of their improper actions, as described herein.

## TENTH CAUSE OF ACTION
### (Constructive Trust)

150.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

151.     Bank of America has wrongfully obtained, and continues to retain, certain funds and profits as a result of its misconduct, which legally belong to Plaintiffs and other class members.

152.     Plaintiffs and other class members are entitled to the imposition of a constructive trust containing all assets, funds, and property derived from Bank of America's wrongful acts, with Bank of America serving as constructive trustees for the benefit of Plaintiffs and the class.

## ELEVENTH CAUSE OF ACTION
### (Federal Declaratory Judgment Act)

153.     Plaintiffs incorporates each and every allegation contained in the preceding paragraphs as if set forth again herein.

154.     The parties have a genuine dispute over whether Bank of America's actions violate the SCRA and TILA and over the validity of the Regulation Z exception that purports to allow raising rates on veterans' outstanding balances.

155.     Plaintiffs seek declaratory and injunctive relief establishing the requirements of the SCRA and TILA as applied to Bank of America's conduct and enjoining Bank of America from violating those statutes in the future.

156.     The Federal Declaratory Judgment Act gives this Court the discretion to entertain a declaratory judgment action. 28 U.S.C. § 2201; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87

(1995). 28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." This Court also has the power to grant "further necessary or proper relief based on a declaratory judgment." 28 U.S.C. § 2202.

## PRAYER FOR RELIEF

**WHEREFORE,** on behalf of themselves and all other persons similarly situated, Plaintiffs respectfully pray for the following relief:

a. An Order certifying the class, appointing the named Plaintiffs as class representatives and Plaintiffs' attorneys as class counsel;

b. Factual findings that Bank of America has violated the Servicemembers Civil Relief Act, the Truth in Lending Act, and the other applicable laws;

c. An award of statutory, compensatory, consequential, and punitive damages;

d. An award of pre-and post-judgment interest;

e. The imposition of a constructive trust containing all assets, funds, and property derived from Bank of America's wrongful acts, with Bank of America serving as constructive trustees for the benefit of Plaintiffs and class members;

f. An Order requiring disgorgement of Bank of America's ill-gotten gains to pay restitution to Plaintiffs and all members of the class;

g. An accounting of all assets, funds, revenues, and profits received and retained by Bank of America as a result of its improper actions;

h.  Declaratory and injunctive relief establishing the requirement of SCRA and TILA as applied to Bank of America's conduct and enjoining Bank of America's future violations of those statutes;

i.  A jury trial on all issues so triable; and

j.  Such other relief as this Court may deem just and proper.

RESPECTFULLY submitted this 27th day of September 2024.

**SMITH & LOWNEY, PLLC**

By:  */s/ Knoll D. Lowney*
Knoll D. Lowney, NCSB# 61997
Claire Tonry, WSBA #44497
Marc Zemel, WSBA #44325
Alyssa Koepfgen, WSBA #46773
2317 E. John Street
Seattle, Washington 98112
Telephone: (206) 860-2883
Facsimile: (206) 860-4187
Knoll@smithandlowney.com
Claire@smithandlowney.com
Marc@smithandlowney.com
Alyssa@smithandlowney.com
*Attorneys for Plaintiffs*

**BALLEW PURYEAR, PLLC**

By:  */s/ Paul J. Puryear, Jr.*
Paul J. Puryear, Jr., NCSB# 41536
Matthew D. Ballew, NCSB# 39515
4000 Westchase Blvd., Suite 300
Raleigh, NC 27607
Telephone: (984) 370-3030
Facsimile: (984) 960-1982
MBallew@ballewlaw.com
PPuryear@ballewlaw.com

*Local Civil Rule 83.1(d) Attorneys for Plaintiffs*

34