IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:24-CV-00560-M

| | | |
|---|---|---|
| SEAN TAYLOR, RICK HAWTHORNE, and ROBERT UYEMATSU, on behalf of themselves and others similarly situated, | ) | |
| Plaintiffs, | ) | ORDER |
| v. | ) | |
| BANK OF AMERICA, N.A., | ) | |
| Defendant. | ) | |

This matter comes before the court on Defendant's Motion to Dismiss the Amended Complaint for Failure to State a Claim [DE 36]. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. issued a Memorandum and Recommendation ("M&R"), recommending that this court grant the motion to dismiss. DE 49. Plaintiffs filed a timely objection to the M&R, and Defendant filed a written response to the objection. DE 50, 51. As set forth herein, the court finds plausible Plaintiffs' allegations, taken as true, that Defendant charged interest in excess of the applicable statutory cap, but implausible Plaintiffs' allegations that Defendant violated federal and/or state law by restoring interest rates, temporarily reduced during a card holder's active duty, to the pre-active-duty rates. Therefore, the court sustains in part and overrules in part Plaintiffs' objections, adopts in part and respectfully declines to adopt in part the M&R, and grants in part and denies in part the Defendant's motion to dismiss.

## I. Background

No party objects to Judge Jones' recitation of the procedural background of this case, and the court recounts it here. Plaintiffs, who are members of the United States military and Bank of America credit card holders, bring this putative class action alleging generally that Defendant Bank of America "charg[ed] interest rates and fees that were too high, allowing unlawful charges to improperly inflate servicemembers' principal balances, and charging interest (including compound interest) on these inflated balances" and then concealed the overcharges in violation of the Servicemembers Civil Relief Act ("SCRA"), the Miliary Lending Act ("MLA"), the Truth in Lending Act ("TILA"), and the Credit CARD Act of 2009 ("CARD Act"), and state law giving rise to claims for breach of contract, breach of implied covenant of good faith and fair dealing, unfair and deceptive trade practices, negligence, negligent misrepresentation, and breach of fiduciary duty or special trust. Am. Compl, DE 33. Plaintiffs specifically allege that Defendant implemented the SCRA through a program that promised greater benefits than the SCRA required, known as the Military Benefits Program, but in actuality failed to meet even the minimum SCRA requirements and charged a "veteran penalty" on service members after they left active duty. *Id.* Defendant responded to the operative pleading by filing the present motion to dismiss, asserting that the bank fully complied with the SCRA, and that all of Plaintiffs' legal theories fail as a matter of law. DE 37.

This court referred the motion to Judge Jones for a memorandum and recommendation. Text Ord., Oct. 22, 2025. Judge Jones recommends dismissal of all claims against Defendant for Plaintiffs' failure to state plausible claims for relief. *See* DE 49. Specifically, Judge Jones found that Plaintiffs' allegations supporting their SCRA, TILA, and CARD Act claims reflect improper interpretations of the statutes or are otherwise conclusory. *Id.* Judge Jones further determined that

the MLA does not apply to the claims of two of the Plaintiffs, which arose prior to the effective date of the MLA, and for the third named Plaintiff (Robert Uyematsu), Judge Jones concluded that Uyematsu's MLA claims fail for the same reasons as his other claims for relief or do not state a violation of the statute. *Id.* Finally, Judge Jones found that the allegations supporting Plaintiffs' contract and tort claims are conclusory or inconsistent with the language of the agreements and, thus, these claims should also be dismissed.

## II. Legal Standards

For dispositive matters, magistrate judges may be designated to conduct hearings (if appropriate) and submit to the district court proposed findings and recommendations for the disposition of such matters. 28 U.S.C. § 636(b)(1)(B). A magistrate judge's recommendation carries no presumptive weight. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations . . . and may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b).

The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Section 636(b)(1) "contemplates that a party's objection to a magistrate judge's report be specific and particularized." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007). Thus, "a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* at 622. Absent a specific and timely objection, the court reviews only for "clear error" and need not give any explanation for adopting the recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## III. Objections

Plaintiffs contend that Judge Jones erred by (1) finding the SCRA permits the computation of daily compound interest for each credit card agreement; (2) relying on legislative history to interpret unambiguous statutory language; (3) suggesting that a regulatory guidance exception allows Defendant to increase interest rates during and after military duty; (4) finding that "extension of consumer credit" does not include each swipe of a credit card and ignoring the fact that Defendant amended Plaintiffs' agreements to include new terms, thus, effectively creating new agreements; and (5) concluding that "general" contract language concerning "protected balances" does not apply in favor of more "specific" language concerning military lending disclosures. *See* DE 50. Defendant lodged no objections to the M&R and argues that "Judge Jones correctly rejected all of [Plaintiffs'] theories." DE 51 at 6.

## IV. Analysis

Here, the parties do not object to Judge Jones' application of the proper legal standard by which to evaluate the present motion. A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). As a result, the court accepts the complaint's well-pled factual allegations as true, and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And importantly, "the

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Likewise, "[l]abels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice." *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 211 (4th Cir. 2019). Ultimately, when considering a motion to dismiss, the court must "draw on its judicial experience and common sense" to determine whether the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

**A. SCRA Claims (First Cause of Action)**

Plaintiffs do not object to Judge Jones' recitation of the statute and relevant case law applicable to their SCRA claims, and the court finds no error in Judge Jones' reliance on these standards. *See* DE 49 at 3-4. The SCRA provision at issue here is the interest rate limitation found in 50 U.S.C. § 3937(a), which mandates (1) a 6% interest rate cap on a servicemembers' pre-military-service balances during a period of active duty; and (2) forgiveness of interest in excess of 6% during the relevant period. *Id.* (citing *Childress v. JPMorgan Chase & Co.*, No. 5:16-CV-298-BO, 2019 WL 2865848, at *8 (E.D.N.C. July 2, 2019)). The term "interest" is defined to include "service charges, renewal charges, fees, or any other charges (except bona fide insurance) with respect to an obligation or liability." *Id.* (citing 50 U.S.C. § 3937(d)(l)). "To state a claim for SCRA violations, [p]laintiffs must allege facts that, taken as true, establish that (1) plaintiffs' loans met the statutory requirement to be eligible for the maximum six percent interest rate benefit; (2) plaintiffs requested the benefit under § 527 [now found in § 3937] in the time and manner prescribed; and (3) Bank of America failed to implement the benefit in the manner and for the time period prescribed." *Id.* (quoting *Childress v. Bank of Am. Corp.*, No. 5:15-CV-231-BO, 2016 WL 2917537, at *2 (E.D.N.C. May 18, 2016)).

Plaintiffs also do not object to Judge Jones' summary of their claims against Defendant. Plaintiffs allege that Bank of America violated the SCRA's interest rate limitation in two ways: first, by utilizing an "average daily balance" method to calculate interest (and adding daily compound interest) that resulted in a rate exceeding 6% on Plaintiffs' accounts during their active military service; and second, by increasing the interest rate on Plaintiffs' accounts, including their pre-existing balances, after their active-duty service ended. DE 49 at 4 (citing Am. Compl. ¶¶ 104-114). Plaintiffs object to Judge Jones' conclusion that "Plaintiffs have failed to state an SCRA claim based on [Defendant's] use of compound interest," explaining that he erred in two respects.

**1. Finding the SCRA Permits Computation of Daily Compound Interest**

Plaintiffs allege that Defendant has violated the SCRA by failing to charge a 6% simple interest rate on pre-active-duty credit balances, as required by the SCRA. Specifically, Plaintiffs allege that Defendant's computation of interest involves an "average daily balance method" that improperly compounds daily interest and inflates the rate above the statutory 6% cap. Am. Compl. ¶ 109 ("Simply put, plugging a '6%' into this algorithm results in an interest rate that is well above the 6% allowed by the SCRA."). Plaintiffs also allege that Defendant failed to "forgive" any interest that accrued over 6% during the Plaintiffs' period of service. *Id.*

Defendant seeks dismissal of these claims arguing that the SCRA does not require a "simple" interest method nor that the bank compute interest differently for active duty service members than for civilian card holders. Defendant asserts that the "legislative history [of the SCRA] is directly on point and rejects Plaintiffs' interpretation." DE 51 at 6. Plaintiffs counter that prevailing law establishes a "general rule" that "where a statute 'is silent as to whether interest is simple or compound,' the plain language alone is dispositive: only simple interest is allowed." DE 50 at 4-5 (citations omitted). Judge Jones concluded that "[t]he court need not . . . rely on a

general rule, where Congress's intent is clear because it declined to adopt a limitation to simple interest in the SCRA." DE 49 at 5.

The court respectfully disagrees with the M&R in three respects: (1) relying on the legislative history without first determining that the statutory language was unclear and/or ambiguous; (2) finding the term "simple interest" to be a "limiting" principle; and (3) relying on a legislative record that does not necessarily support Defendant's position. *See id.* at 5-6.

First, no party disputes that setting an interest rate is a separate question from determining an interest computation method and, here, the SCRA does not expressly identify a specific method. Plaintiffs argue that such omission in the plain language of the statute demonstrates Congress' intent to default to a simple interest method, citing a "general rule" providing that "in the absence of a contract therefor or some statute, compound interest is not allowed to be computed upon a debt." *See* DE 50 at 4 (quoting *Cherokee Nation v. United States*, 270 U.S. 476, 490 (1926)); *see also Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 526 (E.D.N.C. 2012), *aff'd*, 551 F. App'x 646 (4th Cir. 2014) ("Typically, compound interest is not permitted unless otherwise specified by statute or by contract."); *Samson Expl., LLC v. Bordages*, 694 S.W.3d 195, 208 (Tex. 2024), *as corrected on denial of reh'g* (Aug. 30, 2024) ("absent clear and specific contractual or statutory authorization, compound interest is prohibited, and only simple interest is available"). Defendant does not dispute that the method it uses to compute interest on service members' obligations during the relevant period is a "compound" method or, at least, is not a "simple" method. The court finds that under the plain language of the statute and in the absence of other statutory authorization or of a valid agreement to forego the SCRA's statutory cap, the general rule prohibiting compound interest applies.

According to the Fourth Circuit, it is a cardinal rule of statutory construction that, when

interpreting the meaning of a statute, courts begin with the text of the statute itself and must "assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*, 609 F.3d 338, 341 (4th Cir. 2010) (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)); *see also id.* at 342 (quoting *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)) (courts must construe statutory terms in accordance with their "ordinary or natural meaning[s]"). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *DIRECTV Inc. v. Nicholas*, 403 F.3d 223, 225 (4th Cir. 2005) (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)).

The Fourth Circuit instructs that, in interpreting the plain language of a statute, courts must "give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Id.* (quoting *Williams v. Taylor*, 529 U.S. 420, 431 (2000)). In addition, courts must "abide by 'the cardinal rule that statutory language must be read in context [because] a phrase gathers meaning from the words around it.'" *Id.* (quoting *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 596 (2004)); *see also Lara-Aguilar v. Sessions*, 889 F.3d 134, 143 (4th Cir. 2018) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

It is "[o]nly when statutory text is ambiguous" that courts should "consider other indicia of congressional intent such as the legislative history." *United States v. Chaudhri*, 134 F.4th 166, 177 (4th Cir.), *cert. denied*, 146 S. Ct. 208 (2025) (quoting *Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.*, 991 F.3d 512, 516 (4th Cir. 2021)).

Here, the applicable statute reads, in pertinent part:

> (1) Limitation to 6 percent
>
> An obligation or liability bearing interest at a rate in excess of 6 percent per year that is incurred by a servicemember, or the servicemember and the servicemember's spouse jointly, before the servicemember enters military service ***shall not bear interest at a rate in excess of 6 percent*** - . . .
>
>> (B) during the period of military service, in the case of any other obligation or liability.

50 U.S.C. § 3937(a)(1)(B) (emphasis added). Although the language does not identify any "type" of interest—e.g., "simple" or "compound"—the statute is clear that the interest computed on a card holder's pre-service obligation or liability shall not exceed six percent per year during the card holder's military service. The ordinary meaning of the terms "obligation or liability … incurred by a servicemember ... ***shall not bear interest at a rate in excess*** of 6 percent … " plainly means that the card issuer shall not charge "interest" amounting to more than six percent per year on any applicable amount owed by the service member during the period of his or her service. The statute's language is clear and unambiguous: no interest charged on a service member's previously incurred obligation shall exceed the annual rate of six percent during the member's period of service.

This conclusion is reinforced by the language surrounding and supporting the applicable statute, as well as by the statute's own purpose. Section 3937 requires not only that no interest exceeding six percent per year be charged during the military member's period of service, but also that any "[i]nterest at a rate in excess of 6 percent per year that would otherwise be incurred but for the prohibition in paragraph (1) is *forgiven*." 50 U.S.C. § 3937(a)(2) (emphasis added). This clear expression by Congress requires that *any* interest exceeding the statutory ceiling not be simply deferred, but wholly forgiven; a card issuer shall not charge a service member *any* interest exceeding the statutory six percent cap during the relevant period nor recoup such interest later.

*Id.* Moreover, it is notable that the statutory cap applies to obligations other than credit card loans, including mortgages, automobile loans, and other types of debts, which typically do not accrue compound interest.

The statute's express language also aligns with the statute's purpose "to ensure that servicemembers do not suffer financial or other disadvantages as a result of entering the service, so that such persons would be able to 'devote their entire energy to the defense needs of the Nation.'" *Sibert v. Wells Fargo Bank, N.A.*, 184 F. Supp. 3d 296, 303 (E.D. Va. 2016), *aff'd*, 863 F.3d 331 (4th Cir. 2017) (quoting 50 U.S.C. § 3902). In fact, the Fourth Circuit has recognized that the SCRA's protections, including the interest cap on service members' credit obligations, "are important in enabling military members in active duty to devote themselves fully to the Nation's military needs and that [courts] should therefore read the SCRA 'with an eye friendly to those who dropped their affairs to answer their country's call.'" *Espin v. Citibank, N.A.*, 126 F.4th 1010, 1016 (4th Cir. 2025) (quoting *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 458 (4th Cir. 2011).

In sum, the plain language of the statute reflects that no interest shall exceed the annual rate of six percent during the card holder's period of military service. The court finds this language consistent with the general rule that "only simple interest is allowed," absent other statutory authorization or a valid contract governing the computation method. No party argues that another statute or a mutual agreement exists expressly approving a method of interest computation that may exceed the SCRA's statutory cap, and the court has found none.

**2. Relying on SCRA's Legislative History**

The Fourth Circuit instructs that, when statutory language is plain and unambiguous, the court's examination of the statute ceases, and "there is no need for recourse to legislative history."

*Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 207 (4th Cir. 2009). Judge Jones, however, agreed with Defendant and relied on a presumption expressed by the Supreme Court in *Russello v. United States*, 464 U.S. 16, 23-24 (1983), that "[w]here Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." DE 49 at 6. Defendant argues that Congress had previously considered proposals to define "interest" under the SCRA as "simple interest," but the proposed change was never adopted. *See id.* Even if this is true, the court rejects the argument as noted above: courts may not rely on a legislative history without first finding the statutory language to be ambiguous. In this case, the omission of the word, simple, from the definition of "interest" does not render the statute ambiguous and its presence does not "limit" the statutory term. Further, the legislative record on which Defendant relies does not necessarily support Defendant's position.

As already explained, the omission of the word "simple" from the statutory definition of "interest" does not render the statute unclear or ambiguous; the language Congress used demonstrates clearly its intent that interest be computed in such a way that a statutory obligation *shall bear no interest exceeding* the rate of six percent per year. It is undisputed that applying a simple interest computation to a service member's obligation at an annual rate of six percent would not result in "borne" interest that exceeds the statutory cap. Accordingly, any addition of the word simple, which would be, essentially, redundant, does not "limit" the language or the import of the statute and, thus, the *Russello* presumption does not apply.

Even if the court were to consider the legislative record presented by the Defendant, the court finds it does not contain a clear expression of Congress' intent. Proposed bill H.R. 100, which was reported on April 30, 2003, contains the term "simple interest" in the definition of "interest" governing this matter. H.R. 100, 108th Cong. § 207(d). The court reasonably assumes,

as does Defendant, that the term's presence is the issue discussed by Michael Oxley, Chair of the House Financial Services Committee, and Chris Smith, Chair of the Veterans' Affairs Committee, in their written correspondence[1] and acknowledges that these representatives appear to have agreed not to include the term in the proposed legislation. *See* 149 Cong. Rec. H3699 (2003). However, in speaking to the House regarding the legislation, Representative Smith stated, "HR 100 makes it clear that [interest in excess of six percent] is forgiven and *the monthly payment is reduced* in keeping with the act's policy objective of reducing monthly obligations at a time when mobilized National Guard or Reserve members are likely to have a reduced income." 149 Cong. Rec. H3697 (2003) (emphasis added). Additionally, Representative Henry E. Brown, Jr., a co-sponsor of the bill, stated before the House,

> I am especially pleased that this measure maintains the 6 percent interest cap for loans such as mortgages and credit cards, while clarifying that any excess interest is forgiven *and does not accrue*. I applaud the banking community for forgiving the excess interest in the past; I believe it is important to document the intent of Congress in this respect for the future. Many of our reserve component members take a major pay cut when we as a nation call them up for service. It is crucial that our troops not worry about financial issues at home when they are in harm's way abroad.

149 Cong. Rec. H3700 (2003) (emphasis added). The Representatives' statements appear to indicate an understanding that interest is to be computed without accrual and in such a way as to ensure that monthly payments are reduced, as they might be if a simple interest method were applied. The fact that these statements may be construed to contradict (or, at least, to be inconsistent with) the agreement not to keep the added word "simple" in the definition of "interest" demonstrates why relying on a legislative history can be, in some circumstances, a risky business. *Cf., e.g., Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (finding "it is a

---

[1] The term "simple interest" does not appear in the correspondence exchanged between Representatives Oxley and Smith. *See* 149 Cong. Rec. H3699 (2003).

particularly dangerous ground on which to rest an interpretation of a prior statute when it concerns, as it does here, a proposal that does not become law") (citing *United States v. Wise*, 370 U.S. 405, 411 (1962) (noting that congressional inaction lacks "persuasive significance" because "several equally tenable inferences" may be drawn from such inaction, "including the inference that the existing legislation already incorporated the offered change.")).

In sum, it is error to rely on a portion of the SCRA's legislative history without first finding that the statutory language is unclear or ambiguous.

### 3. Plausibility of SCRA Violations Allegations (First Cause of Action)

Judge Jones analyzed Plaintiffs' allegations that Defendant's use of an "average daily balance" method results in the unlawful imposition of an interest rate above 6% and that Defendant improperly increased the interest and fees on card holders after their departure from the military to recoup some or all of the interest rate reduction during their service. *See* DE 49 at 6-10. He concluded that the allegations regarding method application are "speculative and conclusory" (*id.* at 7) and those regarding recouping forgiven interest do not state violations of the SCRA (*id.* at 10). Plaintiffs do not specifically object to these findings. *See* DE 50. Accordingly, the court reviews Judge Jones' findings only for "clear error." *Diamond*, 416 F.3d at 315.

#### a. Allegations Regarding "Average Daily Balance" Method

First, the court finds no clear error in Judge Jones' conclusion that the average daily balance method set forth in the subject agreements "is clearly disclosed in the credit card agreement, as required by TILA and in conformity with the regulations that expressly recognize the 'average daily balance' method." DE 49 at 8. However, the court finds error in the conclusion that Plaintiffs' allegations are insufficient to meet the plausibility standard. The M&R concludes that the operative pleading contains "no non-conclusory facts . . . regarding inflated balances or the

imposition of 'certain fees' despite Plaintiffs having access to their credit card statements." DE 49 at 9. In other words, the Amended Complaint is insufficient because the alleged facts fail to prove that Defendant charged more interest than the 6% cap. This is not the proper standard at this pre-discovery stage of the litigation; rather, the court must determine whether, taking the factual allegations as true, it is plausible that Defendant charged more interest than the 6% cap.

Plaintiffs allege that during the entire period they were on active duty and in Defendant's Military Benefits Program, Defendant charged them at an interest rate higher than 6% on their pre-service obligations. Am. Compl. ¶¶ 46, 55, 67. Specifically, Plaintiffs assert that "Defendant applies a rate above 6% per year through a complex algorithm it uses to impose interest, including daily compound interest calculated on an 'average daily balance,' and through the imposition of certain fees." *Id.* ¶ 80. Further, Plaintiffs allege that "on a monthly basis Defendant sent Plaintiffs and class members account statements which reflected the appropriately reduced interest rate during times of active duty and during additional periods for which benefits were provided under the Military Benefits Program, when Defendant was in fact charging significantly higher interest rates on those accounts, including but not limited to, through compound interest. . . . These higher interest rates improperly inflated Plaintiffs' and class members' outstanding balances, upon which Defendant then charged additional interest." *Id.* ¶ 96. Plaintiffs insert the portion of their credit card agreements with Defendant describing the "average daily balance" method of computing interest and allege:

> One method by which Defendant overcharged servicemembers was to apply a complex formula to impose interest, resulting in an actual interest rate that exceeded the 6% allowed under the SCRA and Military Benefits Program.
>
> This algorithm has numerous interacting features that have the effect of raising Bank of America's credit card interest rates above the SCRA's 6% limit, including: interest is charged upon a fictional "average daily balance," rather than the customer's actual loan amount; the so called "average daily balance" is inflated by

> treating days with a below-zero balance as if it were a zero balance; inflating interest based upon a pre-cycle balance calculation that is contrived to inflate interest charges, including by failing to account for all pre-cycle transactions; adding daily compound interest calculated upon the inflated and fictional "average daily balances" and "pre-cycle balances." Simply put, plugging a "6%" into this algorithm results in an interest rate that is well above the 6% allowed by the SCRA.

*Id.* ¶¶ 108, 109. In seeking to dismiss the SCRA claims, Defendant does not deny that the "average daily balance" method constitutes a compound method of computing interest, nor that compounding interest daily (so long as the balance exceeds zero) causes an increase in the amount of interest charged. *See* DE 37. Rather, Defendant argues that the SCRA does not require card issuers to compute interest by a simple method and that Plaintiffs fail to allege that Defendant's average daily balance method has actually harmed them. *See id.* at 19-20. The court has already addressed Defendant's first argument and disagrees with its second.

Defendant points solely to Plaintiffs' allegations in ¶ 109, recounted above, in arguing that Plaintiffs allege only three ways in which the average daily balance computation violates the SCRA (the paragraph alleges four), and Plaintiffs fail to allege how each of these ways "affected" them. *Id.* Plaintiffs counter that their allegations demonstrate Defendant's "practice of adding daily compound interest, i.e., interest on top of the 6% interest, compounded daily" as a plausible violation of the SCRA. DE 41 at 5-6. The court agrees with Plaintiffs; at this stage of the litigation, the Plaintiffs need only allege facts demonstrating a plausible violation of the SCRA. *Iqbal*, 556 U.S. at 679. Here, construing the allegations in their favor, Plaintiffs allege that they participated in the Military Benefits Program, served on active duty, and were subject to Defendant's use of the compounding method, which increased the 6% statutory cap by compounding interest daily, on their credit balances. Am. Compl. ¶¶ 36, 38, 46, 50, 52, 55, 62, 63, 67, 80, 92, and 96. Defendant does not rebut that Plaintiffs, at this early stage, possess limited information and "do not [yet] have transaction-level data or the bank's algorithm in a useable format." DE 41 at 8. In

other words, Plaintiffs need not *prove* at this stage that they have, in fact, suffered harm by Defendant's conduct. The court finds that Plaintiffs' allegations state a plausible violation of the SCRA.

**b. Allegations Regarding Recouping Interest Post-Active Duty**

Judge Jones found that the "SCRA requires only that the interest rate not exceed 6% 'during the period of military service' and, therefore, Plaintiffs' allegation that Bank of America raised the interest rate above 6% after their active-duty service end[ed] does not state a plausible claim under the SCRA." DE 49 at 10. This court finds no clear error with this conclusion; to the extent that Plaintiffs allege only that Defendant violates the SCRA when it reinstates the pre-active-duty interest rate on Plaintiffs' credit card balances upon leaving active duty, such allegations do not state a plausible claim under the SCRA. *See* 50 U.S.C. § 3937(a)(l)(B) (6% cap applies "during the period of military service" to credit card debt "incurred . . . before the servicemember enters military service").

However, Plaintiffs argue that Defendant's position "ignores that the SCRA also requires excess interest to be permanently forgiven." DE 41 at 9. In the operative pleading, Plaintiffs allege that "Defendant applies a rate above 6% per year through a complex algorithm it uses to impose interest . . . . In addition, rather than permanently forgiv[e] the interest and fees, Defendant retroactively takes back this benefit by imposing an interest rate penalty on servicemembers after they leave active duty and return to civilian life." Am. Compl. ¶¶ 80, 81. Again, to the extent that Plaintiffs allege only that the imposition of the pre-active-duty interest rate upon leaving active duty serves as the "penalty," such allegations are insufficient to state a plausible claim. However, construed in Plaintiffs' favor, the allegations state a plausible claim to the extent that they reflect Defendant's failure (if any) to forgive any interest charged during active duty service that exceeds

the annual rate of 6% and is added (or compounded) to the balance subject to the re-imposed pre-active-duty interest rate. *See id.*; *see also id.* ¶¶ 85, 90, 98. Any failure to make this finding is error.

Accordingly, Plaintiffs' claims alleging that Defendant's mere imposition of the pre-active-duty interest rate upon their return from active duty service violates the SCRA are implausible and dismissed. However, Plaintiffs' allegations that Defendant violates the SCRA by failing to forgive any interest charged during their active duty that exceeds the annual rate of 6% and, instead, includes it in balances subject to the interest rate imposed upon Plaintiffs' return from active duty, state plausible claims of SCRA violations.

**B. TILA Claims (Fourth Cause of Action)**

Plaintiffs also do not specifically object to Judge Jones' recitation of the applicable legal standards and finding that allegations supporting their TILA claims are speculative and conclusory. *See* DE 49 at 11-12; DE 50. As properly stated by Judge Jones, the Truth in Lending Act (TILA) requires a creditor, like Defendant, "to provide to the consumer a statement for each billing cycle for which there is an outstanding balance due" that includes, as relevant here, the interest rate and finance charge. DE 49 at 11 (citing *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 235-36 (2004) and 15 U.S.C. § 1637(b)). A violation of the TILA also requires a plaintiff to show detrimental reliance. *Id.* (citing *Childress v. JPMorgan Chase & Co.*, No. 5:16-CV-298-BO, 2019 WL 2865848, at *8 (E.D.N.C. July 2, 2019)). The M&R concluded that Plaintiffs' "statement[s] show[] a 6% APR and, as explained above, Plaintiffs' allegation that this interest rate was inaccurate is speculative, conclusory, and, therefore, insufficient to state a claim." *Id.* at 12.

As relevant here, the Amended Complaint alleges:

> 138. Defendant violated § 1637 and, upon information and belief, other provisions of TILA, by providing monthly account statements and other uniform

> correspondence to Plaintiffs and other class members which inaccurately reflected the interest rate that Defendant was applying to the outstanding debt of servicemembers during active military duty. In reality, Defendant applied a mathematical formula that charged interest at a rate significantly higher than that permitted under the SCRA, and Defendant's Military Benefits Program.
>
> 139. Plaintiffs and other class members relied on the misrepresentations contained in Defendant's monthly account statements when choosing to maintain their accounts with Defendant. Had Plaintiffs and other class members known that Defendant was charging them an illegally high interest rate in violation of the SCRA and Defendant' Military Benefits Program, or that Defendant's SCRA benefits were not competitive with those offered by other banks, they would not have incurred additional debt on their accounts but rather would have closed their accounts with Defendant and moved to another bank.

DE 33. In accordance with this court's finding that Plaintiffs plausibly allege Defendant charged interest on pre-service obligations during their active duty service that exceeded the 6% statutory cap, the court finds Plaintiffs' allegations state plausible TILA claims. Construing the allegations in their favor, Plaintiffs assert that the written statements they received as card holders during active duty failed to reflect the true interest rate charged on their balances, and, in relying on these statements, Plaintiffs affirmatively paid Defendant on the outstanding balances and did not seek lower interest rates at different banks. Whether these allegations are, in fact, true is a question for a fact finder. At this stage of the litigation, they are sufficient to state plausible TILA claims, and a finding to the contrary is error.

### C. CARD Act Claims (Fifth Cause of Action)

Plaintiffs do not object to Judge Jones' summary of their CARD Act claims and the applicable legal standards. Plaintiffs allege that Defendant violated the CARD Act by increasing the interest rate on protected balances incurred before, during, and after active duty, resulting in the imposition of unlawful fees and interest. DE 49 at 12 (citing Am. Compl. ¶¶ 142-151). Defendant argues that the regulations permit the resumption of pre-active duty interest rates on existing balances once the SCRA no longer applies. *Id.* (citing Def's Mem., DE 37 at 22-25).

Plaintiffs counter that the regulatory exception does not apply, and, alternatively, if it does apply it is void under TILA and preempted by the MLA. *Id.* (citing Pls' Resp., DE 41 at 12-16).

Congress amended TILA through the CARD Act, which provides increased protections on credit card accounts. *Id.* (citing *Lyons v. PNC Bank, N.A.*, 112 F.4th 267, 273 (4th Cir. 2024)). The CARD Act's § 1666i-l(a) generally prohibits a card issuer from increasing "any annual percentage rate, fee, or finance charge applicable to any outstanding balance, except as permitted under subsection (b)." *Id.* In addition to the statutory exemptions, Regulation Z, the implementing regulation for TILA and the CARD Act, provides the following "Servicemembers Civil Relief Act exception":

> If an annual percentage rate or a fee or charge required to be disclosed under § 1026.6(b)(2)(ii), (iii), or (xii) has been *decreased pursuant to 50 U.S.C. app. 527* or a similar Federal or state statute or regulation, *a card issuer may increase that annual percentage rate, fee, or charge once 50 U.S.C. app. 527 or the similar statute or regulation no longer applies*, provided that the card issuer must not apply to any transactions that occurred prior to the decrease an annual percentage rate, fee, or charge that exceeds the annual percentage rate, fee, or charge that applied to those transactions prior to the decrease.

*Id.* (quoting 12 C.F.R. § 1026.55(b)(6)) (emphasis added). The Bureau of Consumer Financial Protection's (BCFP) official interpretation of Regulation Z further provides that if the credit card issuer reduces an interest rate pursuant to the SCRA, "and if the card issuer *also decreases other rates, fees, or charges* (*such as the rate that applies to new transactions*) to amounts that are consistent with 50 U.S.C. app. 527 or a similar Federal or state statute or regulation, the card issuer may increase those rates, fees, and charges consistent with § 1026.55(b)(6)." *Id.* (citing § Pt. 1026, Supp. I, Part 4, ¶ 55(b)(6)-2 (emphasis added)) (hereinafter, "Guidance Exception"). In other words, Regulation Z applies to pre-active-duty balances for which the interest rate has been reduced to 6% under the SCRA, and the Guidance Exception applies to "new" (or during-active-

duty) balances for which card issuers have volunteered to reduce the rate.

Plaintiffs do not object to Judge Jones' rejection of Plaintiffs' theory that the regulatory exception does not apply because Defendant "reduced the interest rate under its Military Benefits Program." *See* DE 49 at 13-14. Upon review of the record, the court finds this rejection is neither clearly erroneous nor contrary to law.

Rather, Plaintiffs object to Judge Jones' reliance on the Guidance Exception to find that Defendant does not violate the CARD Act by increasing interest rates after a card holder leaves active duty service. *See* DE 50 at 6 ("Where the M&R goes astray is its suggestion that the additional guidance exception in 12 C.F.R. § 1026, Supp. I, Part 4 ¶ 55(b)(6) allows BOA to increase interest rates on balances incurred at 6% during and after military duty."). The Guidance Exception can be reasonably construed to clarify[2] that card issuers commit no violation(s) when they increase voluntarily reduced interest rates once a service member leaves active duty, just as they may do on SCRA-reduced rates. *See also* DE 49 at 14 n.3 (quoting BCFP's "example" demonstrating that a card issuer may increase the interest rate on both pre-active-duty and active-duty balances once a service member leaves active duty).

Plaintiffs argue that the Guidance Exception does not apply to Plaintiffs' active-duty and

---

[2] *See* 75 Fed. Reg. 67457 (Nov. 2, 2010) (emphasis added):

> [T]he Board understands that, while the SCRA and some similar state statutes only require creditors to reduce the rates, fees, and charges that apply to obligations incurred before the consumer enters military service, some card issuers voluntarily apply the reduced rate, fee, or charge to transactions that occur after the consumer has entered military service. Accordingly, the Board would adopt a new comment 55(b)(6)-2 *clarifying* that, if a card issuer decreases all rates, fees, and charges to amounts that are consistent with the SCRA or a similar federal or state statute or regulation (including rates, fees, and charges that apply to new transactions), the card issuer may increase those rates, fees, and charges consistent with § 226.55(b)(6).

"post-active-duty" balances because (1) as argued for their SCRA claims, Defendant unlawfully "exceeds the SCRA's 6% cap by imposing daily compounding,"[3] and (2) the exception undoubtedly applies only when the SCRA applies and, since the SCRA applies only to pre-active-duty balances, it does not apply to Plaintiffs' active-duty and post-active-duty balances. The court construes Plaintiffs' first theory as a "consistency" argument; that is, since Defendant's compounding method, by its operation, violates and, thus, is inconsistent with the SCRA, the Guidance Exception, by its terms, does not apply in this case. However, as described above, the court has determined that Plaintiffs' allegations concerning Defendant's implementation of its "average daily balance" (compounding) method state plausible SCRA violations on *pre*-active-duty balances. As set forth herein, Plaintiffs undoubtedly agree that the SCRA rate cap applies only to pre-active-duty balances; therefore, Plaintiffs' first argument is inapplicable to any regulation governing "active-duty and post-active-duty" balances.

Plaintiffs' second argument, necessarily "in the alternative" to the first in conceding application of the SCRA's rate cap only to pre-active-duty balances, fares no better. The court disagrees with Plaintiffs' premise that "the guidance exemption does not apply to balances incurred during and after active duty, because they are *outside the purview of the SCRA*, which is limited to pre-duty debt." DE 50 at 7 (citing 50 U.S.C. § 3937(a)) (emphasis added). The SCRA provision at issue in this case undoubtedly applies "during" a card holder's active duty, as it is during this period that the card issuer is required by the SCRA to cap the interest rate on pre-active-duty balances. The court agrees with Defendant that the SCRA "no longer applies" once the card holder's active duty ceases. In fact, Plaintiffs specifically allege that the challenged increases

[3] In objecting to Judge Jones' findings on their CARD Act claims, this is the full extent of Plaintiffs' argument concerning Defendant's implementation of the compound interest method to their balances owed. *See* DE 50 at 5-7.

occurred "*only upon* SCRA recipients leaving active duty." Am. Compl. ¶ 111.

Another fallacy in Plaintiffs' premise is the assumption that the Guidance Exception permits increases in interest rates on "post-active-duty" balances. By its clear terms, the Guidance Exception permits card issuers to increase rates only on active-duty balances that enjoyed the rate voluntarily reduced to a cap consistent with the SCRA and only to a rate that does not exceed the pre-active-duty interest rate; nothing in the Plaintiffs' allegations reflects that any further rate increases exceeded the pre-active-duty interest rate or, even, occurred after restoration to the pre-active-duty interest rate. Judge Jones was correct in finding no plausible allegation in this case that Defendant's restoration of the interest rates on pre-active-duty and active-duty balances "was attributable to anything other than a consumer leaving military service." DE 49 at 15 (cleaned up).

Plaintiffs also question the validity of the Guidance Exception and contend that Defendant cannot validly assert it relied in "good faith" on the exception pursuant to 15 U.S.C. § 1604(f) of the TILA, particularly because the bank allegedly began violating the SCRA before the exception was published. Defendants counter first that Plaintiffs' claims do not involve the time period before the exception was published and, second, that the validity of the exception does not originate from § 1604(f), but from § 1604(a), which gives the BCFP authority to "provide for such adjustments and *exceptions for all or any class of transactions*, as in the judgment of the Bureau are necessary or proper." DE 51 at 12 (citing 15 U.S.C. § 1604(a)) (emphasis added). Having reviewed the record, the court agrees with Defendant and finds no basis on which to find the Guidance Exception invalid under TILA.

Further, Plaintiffs contend that Defendant may not rely on the good faith defense under § 1640, because Defendant's "rate hikes did not actually comport" with the Guidance Exception. As set forth herein, however, the court finds that Plaintiffs' allegations fail to state plausible claims

that Defendant did not comply with the CARD Act or its accompanying regulations. Judge Jones did not err in concluding that Defendant would not be liable under § 1640, even if the Guidance Exception were determined to be invalid, because it properly relied on and acted in accordance with the Guidance Exception (and Regulation Z). *See* DE 49 at 15-16 (citing *Lopez v. Bank of Orrick*, No. 1:23-CV-02063, 2024 WL 6952824, at *5 (N.D. Ill. Sept. 26, 2024)).

Finally, Plaintiffs assert that the "Military Lending Act preempts any rule that diminishes baseline consumer protections for servicemembers and their dependents," including the Guidance Exception here. DE 50 at 8 (citing 10 U.S.C. §§ 987(a), (d)). They argue that "the M&R erred by allowing exceptions that single out military families and exempt active-duty balances from the CARD Act protections enjoyed by all other consumers." *Id.* Defendant counters that § 987(d) requires preemption only for any "inconsistent" law or regulation (citing 10 U.S.C. § 987(d)(1)), and Plaintiffs point to nothing demonstrating that the Guidance Exception is inconsistent with the Military Lending Act (MLA), which, itself, relies on and incorporates federal law. DE 51 at 13.

"[T]he MLA preempts state and federal laws, but only to the extent those laws do not add 'protection' to service members." *Davidson v. United Auto Credit Corp.*, 65 F.4th 124, 134–35 (4th Cir. 2023) (citing 10 U.S.C. § 987(d)(1)) (Wilkinson, J., dissenting). Plaintiffs assert that Judge Jones erred by construing the Guidance Exception as "somehow beneficial to servicemembers." The court is not persuaded; as noted *supra*, the BCFP adopted the Guidance Exception, which acknowledges card issuers' voluntary provision of benefits greater than those required by the SCRA (i.e., the reduction of interest rates on balances incurred during active duty). While the court has determined that Plaintiffs state plausible SCRA claims, in that Plaintiffs allege the interest rate charged on their pre-active-duty balances actually exceed the statutory cap, these rates are still a significant reduction of the typical pre-active-duty rate. Plaintiffs' characterization

of service members "getting stuck in a debt trap and having to pay dramatically higher interest rates" as "manifestly worse than being allowed to pay off debt at a lower rate" (DE 50 at 8) is merely speculative. Under the SCRA, card issuers must reduce interest rates on pre-active-duty balances until card holders leave active duty service, at which time the pre-active-duty interest rate is restored; if Congress or the BCFP (or those lobbying for the SCRA) believed such restoration would harm service members upon their departure from the military, they would not have proposed or passed such legislation. The court finds no inconsistency between the MLA and the Guidance Exception.

In sum, the court finds Plaintiffs' allegations supporting their CARD Act claims, including any requests for declaratory relief, fail to state plausible claims for relief and dismisses those claims.

**D. MLA Claims (Seventh and Eighth Causes of Action)**

Plaintiffs do not object to Judge Jones' summary of their claims and the applicable legal standards. Plaintiffs allege that Defendant violated the MLA's interest rate disclosure requirements by promising not to raise interest rates on existing balances and making no exception for purchases made at the 6% interest rate. DE 49 at 21-22 (citing Am. Compl. ¶ 169). Defendant contends that this claim fails for the same reasons as the SCRA, TILA, and other claims, the MLA does not apply to Plaintiffs Taylor's and Hawthorne's accounts, and certain harm alleged is not covered under the MLA, all of which Plaintiffs dispute. *Id.* at 22 (citing Def's Mem. at 33-36, DE 37; Pls' Resp. at 25-32, DE 41).

The MLA was enacted in 2006 to protect active duty service members from predatory lending practices. *Id.* (citing *Wood v. Omni Fin. of Nevada, Inc.*, No. 1:22-CV-1148-LMB-IDD, 2023 WL 3766524, at *1 (E.D. Va. May 31, 2023) (citing Department of Defense, Report on

Predatory Lending Practices Directed at Members of the Armed Forces and Their Dependents (2006), https://apps.dtic.mil/sti/pdfs/ADA521462.pdf), *dismissed*, No. 23-1662, 2023 WL 9020964 (4th Cir. Nov. 21, 2023)). The MLA mandates "disclosure obligations and imposes various lending requirements and restrictions on creditors who extend consumer credit to covered members of the armed forces, i.e., active duty service members and their dependents," and the Secretary of Defense is charged with "prescrib[ing] regulations to carry out" the MLA. *Id.* (citing *Wood*, 2023 WL 3766524, at *2 (citing 10 U.S.C. § 987)); *see also Davidson v. United Auto Credit Corp.*, No. 1:20-cv-1263 (LMB/JFA), 2021 WL 2003547, at *2 (E.D. Va. May 19, 2021) (quoting 10 U.S.C. § 987(h)).

Although the MLA's implementing regulations initially did not include open-ended credit accounts, such as credit cards, the definition of "consumer credit" was expanded in 2015 to do so. DE 49 at 22 (citing *Steines v. Westgate Palace, L.L.C.*, No. 6:22-CV-629-RBD-DAB, 2022 WL 18031492, at *3 (M.D. Fla. Dec. 14, 2022) (citing *Limitations on Terms of Consumer Credit Extended to Service Members and Dependents*, 72 Fed. Reg. 50,582 (Aug. 31 , 2007) & 80 Fed. Reg. 43,560 (July 22, 2015))). However, the effective date of that amendment as applied to credit cards was October 3, 2017, and it was not given retroactive effect. *Id.* at 22-23 (citing 10 U.S.C. § 987(h); 32 C.F.R. § 232.13(c)(l) ("[U]ntil October 3, 2017, consumer credit does not mean credit extended in a credit card account"); 80 Fed. Reg. at 43,561).

Judge Jones concluded that, because Plaintiffs Taylor and Hawthorne opened their credit card accounts with Defendant prior to October 3, 2017, "they are not covered by the MLA and their claims should be dismissed." DE 49 at 23. Judge Jones incorporated by reference his order in the related case, *Nowlin, et al. v. Wells Fargo Bank, N.A.*, No. 5:24-cv-00179-M-RJ. Plaintiffs contend that Judge Jones erred "because BOA 'extends credit' 'when the cardholder actually uses

the credit card to make purchases,' not just when it opens or renews an account." DE 50 at 9 (quoting *Am. Ex. Co. v. Koerner*, 452 U.S. 233, 241 (1981)). Plaintiffs incorporate by reference the plaintiffs' objections to Judge Jones' order in *Nowlin*, and attach a copy of such written objections to Plaintiffs' objections here. Technically, this is a violation of Local Civil Rule 72.4(b)(2) and could be prejudicial to Defendant, who is also subject to the page limitations. *Id.* In fact, Defendant objects to Plaintiffs' incorporated objections and argues this court should disregard them. DE 51 at 14-15. Nevertheless, Defendant responds to the objections saying they "lack merit" in that the applicable regulations confirm that an "extension of consumer credit" (as relevant to this case) means the inception of a credit card account and that Plaintiffs' "transaction-by-transaction" theory undermines their MLA claims, since none of the Plaintiffs here was a "covered member" after October 3, 2017.

Judge Jones' order in *Nowlin* addresses whether the plaintiffs' MLA claims in that case should be compelled to arbitration. There, Judge Jones concluded that, because the plaintiffs' accounts—initiated by contract containing an arbitration agreement—were opened prior to the MLA's effective date, they were not protected by the MLA, including its provision rendering unenforceable all arbitration agreements governing disputes regarding extensions of consumer credit initiated by "covered members" (including card holders currently serving on active duty). *Nowlin, et al. v. Wells Fargo Bank, N.A.*, No. 5:24-cv-00179-M-RJ, DE 37 (E.D.N.C. Feb. 6, 2026). Judge Jones granted the motion to compel the *Nowlin* plaintiffs' claims to arbitration. *Id.* The *Nowlin* plaintiffs requested review of that order, and this court, in interpreting the plain language of the applicable statutory provision, found no error by Judge Jones in ultimately compelling the arbitration of two plaintiffs' claims, but determined the order contrary to law in compelling the arbitration of claims alleged by the third plaintiff, a card holder serving on active

duty. *Id.*, DE 44. Because the court came to its conclusions based on reasons different from those expressed by Judge Jones and argued by the parties, it did not reach the arguments proffered here.

All parties agree that the provision of the MLA applicable here is found in 10 U.S.C. § 987(a), which provides in pertinent part that, "[a] creditor who extends consumer credit to a covered member . . . shall not require the member . . . to pay interest with respect to the extension of such credit, except as" agreed by the parties, authorized by law, and not prohibited by this statute. Also undisputed is that the MLA's effective date is October 3, 2017, and its application is not retroactive. Defendant moves to dismiss MLA claims alleged by Plaintiffs Taylor and Hawthorne because the undisputed facts demonstrate that they opened their credit card accounts prior to the MLA's effective date. Plaintiffs counter that an "extension of consumer credit" occurs not only at the account opening but also at each transaction and, therefore, as all Plaintiffs engaged in credit transactions during active duty after the MLA's effective date, they are covered by the statute. Judge Jones agreed with Defendants and found that because § 987(f)(4) applies only to disputes involving "the extension of consumer credit," and that such extension occurs at the inception of a credit card account, which, for the named Plaintiffs except Uyematsu, occurred before the MLA's effective date, Plaintiffs Taylor and Hawthorne failed to state plausible claims for relief under the MLA.

The MLA does not specifically define the term "*extends* consumer credit." Rather, the statute directs the Secretary of Defense to "prescribe regulations to carry out" the statute's requirements, including establishing definitions of "creditor" and "consumer credit." 10 U.S.C. § 987(h)(2)(D). These definitions are found in 32 C.F.R. § 232.3 and include the term "credit," which means "the right granted to a consumer by a creditor to defer payment of debt or to incur debt and defer its payment." 32 C.F.R. § 232.3(h); *see also* TILA, 15 U.S.C. § 1602(f) (reflecting

a nearly identical definition of "credit").[4] Thus, under the plain language of the statute and applicable regulation, an "extension" of credit means the extension of a *right* by a card issuer to a card holder to defer payment of existing debt or to incur—in the future—debt and defer its payment. Putting such definition into practice, for open-end accounts such as here, a credit issuer extends a promise to a card holder either that the card holder may make purchases in the future and defer payments for those purchases, such as in a new credit card agreement, or that the card holder may defer payment of any existing debt, such as when a credit card agreement is renewed or assumed by another credit issuer.

The Plaintiffs object, arguing that, for open-end accounts, credit is extended both at inception and each time a card holder makes a purchase. But, adopting such definition would invite a redundancy that Congress surely did not intend. The right to incur debt and defer its payment has already been extended at the inception (or renewal) of the agreement; why would such right need to be extended thereafter each time the card holder incurs debt? In fact, parties may enter a credit card account in which no debt is ever incurred; however, the promise remains, because it was made at the inception of the agreement. For these reasons, and those expressed by Judge Jones, the court finds that the MLA claims alleged by Plaintiffs Taylor and Hawthorne are not covered by the MLA, because their agreements were entered before the statute's effective date.

With respect to Plaintiff Uyematsu, whose claims indisputably arose after the MLA's effective date, Plaintiffs contend that, like his SCRA and CARD Act claim, Uyematsu properly states claims pursuant to 10 U.S.C. § 987(a) (providing that creditors shall not require covered members to pay interest on extensions of consumer credit, except as authorized by agreement and

---

[4] No party disputes that the Defendant is a "creditor" and the accounts at issue in this case involve the extension of "consumer" credit and, thus, the court need not set forth these statutory definitions.

applicable law). The court finds, consistent with its conclusions herein, that Uyematsu states a plausible MLA claim with respect to Plaintiffs' allegation that Defendant exceeded the 6% interest rate cap required by the SCRA during active duty (*see* Am. Compl. ¶¶ 66-69, 163), but he states no plausible MLA claim based on Plaintiffs' allegation concerning the "increase" (or restoration) of the interest rate when Uyematsu left active duty (see id. ¶¶ 71-72, 163).

Finally, Plaintiffs contend that Uyematsu properly pleads a violation of the MLA, 10 U.S.C. § 987(c), alleging that Defendant, when it adjusted the SCRA-reduced interest rate to its prior standard rate after the period of active duty, failed to "segregate out" the "existing balance," label it a "Protected Balance" on future monthly account statements, and keep it "at [its] current APR until the balances are paid in full," as allegedly promised in the credit card agreement. *See* DE 50 at 11 (citing DE 33 at 51). Plaintiffs rely on these allegations as well for their claims alleging violations of the CARD Act, breach of contract, and breach of duty of good faith and fair dealing. *See* Am. Compl. ¶¶ 128, 134, 142-151. Plaintiffs contend that the agreement's language is not "clear" in describing that, "after active duty, the rates on existing balances would skyrocket, contrary to the language in the agreement that specifically says interest rate changes won't apply to existing balances." DE 50 at 11.

In analyzing the Plaintiffs' contract claims, Judge Jones noted that no "provision in the agreement requir[es] a permanent 6% interest rate," and that, in fact, one provision expressly states: "**Servicemembers Civil Relief Act**: *While you remain on active duty*, the APR will not be greater than 6.00% pursuant to the terms of the Servicemembers Civil Relief Act." Am. Compl. ¶ 125, DE 33; *see also id.* at 58 (italics added). This provision clearly notifies eligible card holders that they will enjoy the 6% interest rate only while on active duty service. Plaintiffs object, however, that another provision in the agreement requires contrary action by Defendant and, if not

performed, results in a breach of the agreement or, at least, demonstrates a violation of federal law:

> **Rates for Protected Balances**
> When an interest rate change for new transactions is applied to your account, any existing balances of that type will be identified as Protected Balances on your statement. These Protected Balances generally are kept at their current APR until the balances are paid in full.

DE 33 at 51. For his MLA claim, Plaintiff Uyematsu argues that this provision, coupled with the SCRA provision, create confusion and violate the MLA, § 987(c), which requires a "statement of the annual percentage rate of interest applicable to the extension of credit" and a "*clear* description of the payment obligations of the member or dependent." 10 U.S.C. §§ 987(c)(1)(A), (C).

The court finds Plaintiffs' theory in this regard separate from their allegations that the credit card agreements contain unmet promises to reduce interest rates to the SCRA's cap during active duty. Here, Plaintiffs argue that the agreements create confusion by purportedly contrary terms, but the court is not convinced. The "Protected Balances" provision notifies card holders of the CARD Act's general requirement that card issuers may not increase interest rates on "outstanding balances," except under certain circumstances (*see* 15 U.S.C. §§ 1666i-1(a), (b)). In fact, the provision is located in the agreement's standard language concerning "INTEREST RATES – ANNUAL PERCENTAGE RATES (APRs)" for all card holders. *See* DE 33 at 51.[5] The SCRA provision, on the other hand, applies only to card holders eligible under that statute, and specifically provides that a decreased interest rate will be applied during the card holder's active duty service. The reasonable (and accurate) conclusion from this language is that the rate will return to its prior rate once active duty ends. Thus, the "Protected Balances" provision applies to any unanticipated changes (including increases) that may occur to the APR involving all card

[5] An Account Renewal Notification for Plaintiff Taylor, dated April 15, 2024, reflects both the SCRA and Protected Balances provisions located under the same heading. DE 33 at 58. Notably, this document specifies: "Your account does not currently have any Protected Balances." *Id.*

holders, while the SCRA provision applies to the specific statutorily required rate reduction for certain card holders during an identified fixed time period. To the extent that Plaintiffs contend their outstanding balances subject to the SCRA reduced rate should be characterized as "Protected Balances" pursuant to the agreement, the court disagrees; nothing in the agreement nor the applicable statute(s) requires that the reduced rate's restoration to the prior APR at the end of a card holder's active duty be construed as an "increase" subject to §§ 987 or 1666i-1.[6] The court finds no ambiguity nor confusion and concludes that Plaintiff Uyematsu has failed to state a plausible disclosure violation under the MLA against Defendant.

**E. Remaining Claims (Second, Third, Sixth, and Ninth through Eleventh)[7]**

With respect to Plaintiffs' remaining state law contract and tort claims, Judge Jones found that they failed to state plausible claims for relief. DE 49 at 16-21. Plaintiffs object, arguing only that for the same reasons stated for Uyematsu's § 987(c) claim, Plaintiffs "have properly pled a breach of contract claim related to [Defendant]'s failure to honor its promise to keep balances incurred before a rate hike 'at their current APR until the balances are paid in full.'" DE 50 at 11.

---

[6] The court finds that these provisions are separate and distinct; however, if they could be construed as involving the same "occurrence"—i.e., the "increase" of an interest rate on an extension of consumer credit—the court would find the terms to be in tension and that the specific provision, or the "SCRA provision," controls. *See S. Ry. Co. v. Coca Cola Bottling Co.*, 145 F.2d 304, 307 (4th Cir. 1944); *see also Liberty Mut. Fire Ins. Co. v. Sutton*, No. 21-1277, 2022 WL 11112589, at *6 (4th Cir. Oct. 19, 2022) ("North Carolina also follows the specific-over-the-general canon of contract construction, under which the more specific provision governs over the more general in case of conflict.") (citing *Wood-Hopkins Contracting Co. v. N.C. State Ports Auth.*, 202 S.E.2d 473, 476 (N.C. 1974)).

[7] Plaintiffs' Fourteenth Cause of Action alleging a "claim" under the Federal Declaratory Judgment Act is actually a specific request for relief, not a claim for which Plaintiffs have a private right of action. The same is likely true under state law for Plaintiffs' Twelfth ("accounting") and Thirteenth ("constructive trust") Causes of Action. *See Howard v. IOMAXIS, LLC*, No. 18 CVS 11679, 2021 WL 6067530, at *12 (N.C. Super. Dec. 22, 2021) (finding plaintiff's "constructive trust claim is not a claim at all but is rather a request for relief."); *Danielson v. Human*, No. 3:12-CV-00840-FDW, 2014 WL 1765168, at *5 n.4 (W.D.N.C. May 2, 2014) (same).

Upon de novo review of the Plaintiffs' breach of contract claims,[8] the court disagrees with Plaintiffs' argument for the reasons already stated; however, consistent with the court's findings herein, the allegations contained in paragraph 125 of the operative pleading, taken as true (absent the phrase, "and through imposing a veteran penalty"), state a plausible breach of contract claim.

Upon review of Judge Jones' findings and conclusions regarding the remaining claims, the court finds no error and dismisses those claims.

## V. Conclusion

Plaintiffs have stated plausible claims under the SCRA, TILA, and MLA based on their allegations, taken at this stage to be true, that Defendant failed to charge interest at the 6% statutory cap on pre-active-duty credit card balances and to notify Plaintiffs of such failure. Accordingly, the following claims, only as described herein,[9] will proceed in this action: first ("Defendant charged interest rates higher than 6% on the accounts of Plaintiffs and class members during active military service" (¶ 107; *see also* 108-110); second (¶ 125, absent the phrase, "and through imposing the veteran penalty"); fourth; and seventh, only as to Plaintiff Uyematsu (¶ 163, absent the third sentence starting "Defendant breached the contract by later increasing the rates. . . ."). All other causes of action fail to state plausible claims for relief and are dismissed.

---

[8] The court recognizes the Fourth Circuit's instruction that "[t]he specificity required for an objection is a 'modest bar,'" and that even a "slim" objection may trigger de novo review by the district court. *United States ex rel. Wheeler v. Acadia Healthcare Co., Inc.*, 127 F.4th 472, 486 (4th Cir. 2025) (citation omitted).

[9] By limiting the descriptions of the plausible claims in this respect, the court does not intend to exclude Plaintiffs' allegations concerning their damages for each claim.

Accordingly, the court sustains in part and overrules in part Plaintiffs' objections, adopts in part and respectfully declines to adopt in part the recommendation, and grants in part and denies in part Defendant's motion [DE 36], as set forth herein.

SO ORDERED this 4th day of August, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE